UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE L. HOOPER,

        Plaintiff,        Civil Action No. 16-11723
                               Honorable John Corbett O'Meara
                               Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 14]

Plaintiff George Hooper ("Hooper") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Hooper is not disabled under the Act is not supported by substantial evidence. Thus, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be DENIED, Hooper's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On November 28, 2012, Hooper filed an application for SSI, alleging disability as of that date. (Tr. 119-24). This application was denied initially on March 19, 2013. (Tr. 68-71). Hooper filed a timely request for an administrative hearing, which was held on April 24, 2014, before ALJ Martha Gasparovich. (Tr. 24-57). Hooper, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert Michelle Robb. (*Id.*). On October 17, 2014, the ALJ issued a written decision finding that Hooper is not disabled under the Act. (Tr. 13-19). On April 20, 2016, the Appeals Council denied review. (Tr. 1-5). Hooper timely filed for judicial review of the final decision on May 13, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

> regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

   *1.     Hooper's Reports and Testimony*

At the time of the administrative hearing, Hooper was 54 years old, and at 5'8" tall, weighed 215 pounds. (Tr. 38, 143). He lived in a house with his father and step-mother. (Tr. 155). He completed the twelfth grade and subsequently earned computer, auto mechanic, and semi-truck driving certificates. (Tr. 30, 144). Hooper stopped working in September 2004, because he was incarcerated, but now alleges that his medical condition became severe enough to prevent him from working when he was released from prison in November 2012.[1] (Tr. 143).

Hooper alleges disability primarily as a result of low back pain and vision loss in his left eye. (Tr. 33, 143). He testified that he has been "partially blind" in his left eye since 2006; although he has driven semi-trucks since then, he testified that he was having difficulty focusing

---

[1] It appears that Hooper subsequently worked briefly as a semi-truck driver, from November 2013 to December 2013, before suffering additional injuries in a work-related motor vehicle accident. (Tr. 31-32, 130, 138).

3

while driving at night and felt he was endangering himself and others. (Tr. 33-34). He had back surgery in the early 1990s and still experiences significant back pain.[2] (Tr. 34-35). He testified that he has been using a cane for more than twenty years. (Tr. 40). He can sit for 15-20 minutes, stand for 20 minutes (with a cane), walk approximately one block (with a cane), and lift 15-20 pounds. (Tr. 43-45, 160). Hooper also testified that his left hand is "totally numb," which makes it difficult to hold objects, and he has a "fractured knee," which might require surgery. (Tr. 35-36, 41). Hooper has difficulty with personal care (i.e., he needs help getting in and out of the bathtub and putting on clothes). (Tr. 36, 42, 156). However, he is able to prepare simple meals and shop in stores on an infrequent basis. (Tr. 158).

        2.     *Medical Evidence*

The Court has thoroughly reviewed Hooper's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

**D.    The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Hooper has not engaged in substantial gainful activity since November 28, 2012 (the application date). (Tr. 15). At Step Two, the ALJ found that Hooper has the medically determinable impairments of degenerative disc disease at L4-L5 and L5-S1; a lumbar strain; degenerative spondylosis at C5-C6; reduced vision in the left eye; mild degenerative joint disease of the left knee; and paresthesia of the left hand. (*Id.*). However, the ALJ found that none of Hooper's impairments, whether considered alone or in combination, are "severe," in that they do not significantly limit (or are not expected to significantly limit) his ability to perform basic work-related activities for

---

[2] At the time of the hearing, Hooper had not been treating for his back pain because he had no health insurance. (Tr. 37).

twelve consecutive months. (*Id.*). As a result, the ALJ concluded that Hooper is not disabled under the Act. (Tr. 19).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may

look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

As set forth above, the ALJ found that Hooper has the medically determinable impairments of degenerative disc disease at L4-L5 and L5-S1; a lumbar strain; degenerative spondylosis at C5-C6; reduced vision in the left eye; mild degenerative joint disease of the left knee; and paresthesia of the left hand. (Tr. 15). She then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act. (*Id.*). On appeal, Hooper argues that the ALJ erred by not finding his back or vision impairments to be severe.

At Step Two of the sequential evaluation process, the ALJ must determine whether a claimant has a severe impairment. *See* 20 C.F.R. §416.920(a)(4)(ii). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record

contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act …." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.*

As Hooper correctly points out, the Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929. The inquiry at step two functions as an "administrative convenience to screen out claims that are 'totally groundless' from a medical perspective." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n. 1 (6th Cir. 1985)).. Thus, an impairment can be considered not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 862. Under this standard, then, the question is "whether there is substantial evidence in the record supporting the ALJ's finding that [Hooper] has only a 'slight' impairment that does not affect [his] ability to work." *Farris*, 773 F.2d at 90.

In evaluating the severity of Hooper's low back pain and vision loss, the ALJ noted that,

7

following a car accident in 1993, Hooper underwent a lumbar laminectomy in March 1994[3] (with a "single metallic instrument placed over the interspinous space of the L4-5 region"). (Tr. 17, 278, 280-81). X-rays taken a few months later showed a laminectomy defect on the left at L4-L5 with possible scar formation extending into the spinal canal and lateral recess and some disc bulging. (Tr. 241-42). As the ALJ noted, another x-ray of Hooper's lumbar spine taken in January 1999 showed degenerative disc disease at L4-L5, with facet osteoarthritis and minimal disc space narrowing at this level. (Tr. 17, 215). An x-ray of Hooper's cervical spine taken at the same time showed mild degenerative spondylosis at C5-C6. (Tr. 17, 216). Hooper was then incarcerated for much of the period up until November 27, 2012, and his prison medical records are sparse, showing complaints of back pain but no ongoing treatment *per se*, aside from prescriptions for Naprosyn and a bottom bunk detail. (Tr. 313, 338, 340, 352, 368, 374, 377, 383, 396, 419).

While incarcerated, Hooper was seen at Munson Medical Center with loss of vision in his left eye, associated with a vitreous hemorrhage and retinal detachment. (Tr. 301-02). He underwent surgery (a vitrectomy) on December 21, 2006, and then returned to the emergency room one week later reporting that although he had "started to get a little bit of his vision back" after the surgery, he subsequently "started losing his vision again" and could no longer see out of his left eye. (Tr. 299). He was advised that there was nothing that could be done and that his vision might never return. (*Id.*). Hooper continued to receive prescription eye drops on multiple occasions while incarcerated. (Tr. 326, 331, 336, 339, 343, 347, 349, 362, 382, 391, 423).

On February 23, 2013, Hooper underwent a consultative physical examination with Aaron Anderson, D.O. (Tr. 438-42). He reported ongoing back pain, with radiation into his left

---

[3] Prior to this surgery, a November 1993 CT scan showed disc herniation at L4-L5 and minimal disc bulging at three other levels. (Tr. 290).

8

lower extremity and associated numbness. (Tr. 438). On examination, Hooper had mild difficulty getting on and off the exam table, heel and toe walking, squatting, and hopping. (Tr. 439). Dr. Anderson found mild decreased range of motion in the lumbar spine and paravertebral muscle spasm. (Tr. 440). X-rays of Hooper's lumbar spine taken that day showed straightening of the normal lumbar lordosis; disc narrowing at L4-L5 and L5-S1; multilevel facet arthropathy; and mild marginal spurring throughout the lumbar spine. (Tr. 441). With respect to his left eye vision, Hooper described "near total blindness" and poor depth perception. (*Id.*). Dr. Anderson noted that Hooper's "poor vision is confirmed with vision testing in the clinic today," noting that his corrected vision in his left eye was 20/160. (Tr. 439-40).

On March 19, 2013, state agency physician B.D. Choi, M.D. reviewed Hooper's medical records and concluded that he has the severe impairment of degenerative disc disease. (Tr. 62-65).

As the ALJ noted, Hooper was next seen at the emergency room on December 5, 2013, after reinjuring his back in a motor vehicle accident. (Tr. 471-72). An x-ray of the lumbar spine showed no evidence of a compression fracture; however, it showed degenerative changes, including mild disc space narrowing (most prominently at L3-S1) with osteophyte formation and diffuse facet arthropathy. (Tr. 477). Hooper was prescribed Norco and muscle relaxers and discharged home. (Tr. 472).

In concluding that Hooper's low back pain does not significantly limit his ability to perform basic work activities, and therefore is not a severe impairment, the ALJ first noted that Hooper "has had very little treatment for low back [] pain since his December 2013 motor vehicle accident." (Tr. 17). The ALJ further noted that the treatment Hooper has received "has been conservative, consisting of only a few treatment visits and use of prescription medication."

9

(*Id.*). While these statements might be true, Hooper testified that he has been without medical insurance and has had difficulty obtaining medical treatment (Tr. 37), a fact that the ALJ failed to mention or consider. Indeed, all of the medical evidence in the record is from treatment rendered while Hooper was imprisoned or, after his release, in the emergency room. Before discounting Hooper's allegations of disability based on the lack of medical treatment following his 2013 car accident, the ALJ should have at least considered Hooper's explanation for this. *See, e.g., Soc. Sec. Rul. 16-3p*, 2016 WL 1119029, at *8-9 (Mar. 16, 2016) (when considering an individual's lack of treatment, ALJ should consider "possible reasons" for this, such as the fact that the individual "may not be able to afford treatment and may not have access to free or low-cost medical services"); *see also McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (agreeing that a "condition that is disabling in fact continues to be disabling in law," when the claimant "cannot afford prescribed treatment or medicine, and can find no way to obtain it") (internal quotations omitted).

The ALJ also found Hooper's back impairment non-severe because "no treater has issued ongoing restrictions" and "diagnostic imaging has shown abnormalities in the mild range." (Tr. 17). Again, however, x-rays of Hooper's lumbar spine taken on February 23, 2013 showed straightening of the normal lumbar lordosis; disc narrowing at L4-L5 and L5-S1; multilevel facet arthropathy; and mild marginal spurring throughout the lumbar spine. (Tr. 441). The consultative examiner, Dr. Anderson, noted that same day that Hooper had decreased range of motion in the lumbar spine, paravertebral muscle spasm, and difficulty getting on and off the exam table, heel and toe walking, squatting, and hopping. (Tr. 439-40). Having reviewed the results of this examination, as well as Hooper's other medical records, Dr. Choi, the state agency physician, specifically concluded that Hooper has the severe impairment of degenerative disc

disease. (Tr. 62-65). Thus, Dr. Choi's opinion in this respect contradicts the ALJ's interpretation of the medical evidence as showing only "abnormalities in the mild range." (Tr. 17). Given all of these facts, the Court cannot conclude that the ALJ's finding that Hooper's back impairment is non-severe is supported by substantial evidence.

Similarly, in concluding that Hooper's vision impairment is non-severe, the ALJ observed that "[i]n prison medical records from 2010 through 2012, [Hooper] did not report vision difficulties[.]" (Tr. 18). This is incorrect: as stated above, Hooper received prescription eye drops on multiple occasions while incarcerated (Tr. 326, 331, 336, 339, 343, 347, 349, 362, 382, 391, 423), certainly suggesting that he did in fact complain of ongoing vision difficulties. In addition, the ALJ concluded that Hooper's vision impairment is not severe because he "was able to maintain a career as a truck driver," saying that despite the fact he was diagnosed with this left eye impairment in 2006, "he worked as a truck driver until 2013." (Tr. 18). These statements too are inaccurate. As noted above, Hooper was in prison until November 2012. (Tr. 37-38). And, he worked as a truck driver for only a few weeks in 2013, earning just over $2000, before he was involved in an accident – while driving a semi-truck. (Tr. 130, 138). These facts are a far cry from the ALJ's suggestion that Hooper was regularly working as a semi-truck driver between the time of his 2006 eye surgery and 2013. (Tr. 130, 138). Moreover, Hooper testified that, at the time of his December 2013 car accident, he was getting ready to quit his job as a truck driver, saying he was "having difficulty focusing [at] night" and felt he was endangering his life, as well as the lives of others. (Tr. 34).

Given all of these facts, the Court cannot conclude that the ALJ's step two findings are supported by substantial evidence. Indeed, the evidence seems to demonstrate that Hooper has lower back and vision impairments sufficiently severe to satisfy the "*de minimis* hurdle" posed at

step two of the sequential analysis, and the Court does not view this case as one presenting a "totally groundless" claim from a medical standpoint. *See Higgs*, 880 F.2d at 862-63. Although Hooper's impairments might ultimately be deemed non-disabling, that determination can only properly be made after a more complete application of the five-step sequential analysis. Thus, the ALJ's conclusion that Hooper's back and vision impairments are non-severe is not supported by substantial evidence, and remand is warranted.[4]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be DENIED, Hooper's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: January 25, 2017　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

---

[4] Hooper also argues that the ALJ erred in evaluating his credibility and in failing to give appropriate weight to the opinion of a nurse practitioner. (Doc. #13 at 15-18). Because the Court is remanding on other grounds, it need not address these issues in detail. On remand, however, the ALJ should ensure that fair consideration is given to these issues.

objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2017.

    s/Eddrey O. Butts
    EDDREY O. BUTTS
    Case Manager